# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 25, 2003 Session

## STATE OF TENNESSEE v. LEE ANN WOLFE and
## EDWARD CARL BARNETT

**Direct Appeal from the Criminal Court for Hawkins County**
**No. 7967B and 7967C     James Edward Beckner, Judge**

---

**No. E2002-00776-CCA-R3-CD**
**September 9, 2003**

---

At a joint trial, a Hawkins County jury convicted each Defendant of numerous drug-related offenses. The same jury also convicted Defendant Wolfe of tampering with evidence and convicted Defendant Barnett of two theft offenses. Wolfe received an effective sentence of five years of incarceration, and Barnett's effective sentence was twelve years of incarceration. On appeal, both Defendants challenge the sufficiency of the convicting evidence and the propriety of the sentences imposed by the trial court. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

John S. Anderson (on appeal) and Mark S. Stapleton (at trial), Rogersville, Tennessee, for the appellant, Lee Ann Wolfe. James F. Taylor, Mt. Carmel, Tennessee, for the appellant, Edward Carl Barnett.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; C. Berkeley Bell, District Attorney General; J. Douglas Godbee, Jr. and Jack Marecic, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Procedural Background

The Hawkins County Grand Jury indicted the Defendants, Lee Ann Wolfe and Edward Barnett, for the following offenses: (1) possession of .5 grams or more of a substance containing cocaine, a Schedule II controlled substance, with intent to sell or deliver; (2) possession of methamphetamine, a Schedule II controlled substance, with intent to sell or deliver; (3) possession of dihydrocodeinone, a Schedule III controlled substance, with intent to sell or deliver; (4) possession of oxycodone, a Schedule II controlled substance, with intent to sell or deliver; (5) possession of

more than .5 ounces of marijuana, a Schedule VI controlled substance, with intent to sell or deliver; and (6) possession of drug paraphernalia. In addition, Wolfe was indicted for tampering with evidence, and Barnett was indicted for theft of property valued between $1,000 and $10,000 and theft of property valued at $500 or less.

A Hawkins County jury convicted Wolfe of the following offenses: (1) simple possession of cocaine, a Schedule II controlled substance; (2) possession of methamphetamine, a Schedule II controlled substance, with the intent to deliver; (3) possession of more that .5 ounces of marijuana, a Schedule VI controlled substance, with intent to deliver; (4) possession of drug paraphernalia; and (5) tampering with evidence. The trial court sentenced Wolfe to an effective sentence of four and one half years.

The same jury convicted Barnett of the following charges: (1) possession of .5 grams or more of cocaine, a Schedule II controlled substance, with intent to deliver, (2) possession of methamphetamine, a Schedule II controlled substance, with intent to deliver, (3) possession of dihydrocodeinone, a Schedule III controlled substance, with intent to deliver, (4) possession of oxycodone, a Schedule II controlled substance, with intent to deliver, (5) possession of more than .5 ounces of marijuana, a Schedule VI controlled substance, with intent to deliver, (6) possession of drug paraphernalia, (7) theft of property valued between $1,000 and $10,000, and (8) theft of property valued under $500. Barnett received an effective sentence of twelve years.

In this appeal as of right, Wolfe and Barnett both argue that insufficient evidence was presented to sustain their convictions and that the trial court erred in sentencing them. Finding no error, we affirm the judgments of the trial court.

## II. Factual Background

The charges in this case stem from a search of a residence located at 1116 Slate Hill Road, Hawkins County, on June 6, 2001. Members of the Hawkins County Sheriff's Department went to the home to investigate several thefts in the area. Upon searching the home, officers found an array of drugs and drug paraphernalia, in addition to several items that had been reported stolen. The home was owned by Kenneth Wolfe, but testimony was presented that Lee Ann Wolfe and Edward Barnett lived in the home and shared a bedroom. Testimony was also presented as to the presence in the home of Jeanette Caudill and Terry Turner. Kenneth Wolfe, Lee Ann Wolfe, Edward Barnett, Jeanette Caudill, and Terry Turner were all charged with various offenses in this case.

The following testimony was presented at the trial of Lee Ann Wolfe and Edward Barnett: Robby Drinnon testified that he owns D. & R. Market in Mooresburg, Hawkins County, Tennessee. He stated that he previously owned an air compressor that was located at his market. Drinnon recalled that one morning, he noticed that the compressor was missing. He observed "where they had jerked it out of the ground." He elaborated: "The concrete had made a place in the road. And they'd drug it out 11-W on to Slate Hill Road and all the way down to the lake." Drinnon testified that he did not give anyone permission to take the air compressor. He estimated that the value of the

compressor was less than $500. Drinnon testified that he had seen Barnett in his store, but he did not know Barnett's name prior to this incident.

Danny Wilder testified that around May 31, 2001, the following items that he owned were stolen: an Articat four-wheeler, a paint gun, welding tanks, and an air compressor. Wilder stated he and an officer from the Hawkins County Sheriff's Department went to the residence located at 1116 Slate Hill Road, where he recovered his air compressor, paint gun, and hose from a building behind the home. He maintained that he had not given Edward Barnett or anyone else permission to take those items. Wilder estimated that the value of the property taken from him was around $8,500. He noted that the Hawkins County Sheriff's Department recovered the four-wheeler from the residence of a man whose last name was Coffee and returned it to him.

On cross-examination, Wilder testified that he had never been to Barnett's home prior to this incident. He stated that the four-wheeler that was taken was a 2000 model, four-wheel drive, green Articat. Wilder testified that the four-wheeler was recovered from a location approximately five or ten miles away from Barnett's home and that "Eddie" took him to the location to find the four-wheeler.

Deputy James Edward Woods of the Hawkins County Sheriff's Department testified that in June 2001, he attempted to help Danny Wilder recover some stolen property. He recalled going to the residence located at 1116 Slate Hill Road to question Edward Barnett about a stolen four-wheeler. According to Woods, Barnett responded that a person named Marty Gratz had left a four-wheeler at his property in lieu of some money owed. Woods testified that Barnett claimed to have loaned the four-wheeler to someone else. He stated that while at Barnett's home, he recovered a Campbell Hausfeld air compressor and a canister spray gun, which were returned to Danny Wilder at the scene. He noted that he recovered the four-wheeler from the home of Joe Coffee in Mooresburg. Woods maintained that Barnett was cooperative during the investigation. He reported that Barnett claimed that he had obtained all of the stolen property from Marty Gratz. He stated that there was no indication that Lee Ann Wolfe was involved in the thefts.

Detective Randy Collier testified that Deputy James Woods notified him in the early morning hours of June 6, 2001 that someone from Grainger County had located some property that had been stolen. He stated that he advised Woods to go to the location where the property was allegedly located to investigate. Colllier testified that he also advised Woods to notify the Grainger County Sheriff's Department of his investigation. Collier indicated that he met with a Grainger County detective at 8:00 a.m., and they proceeded to the residence at 1116 Slate Hill Road. He reported that he spoke to Edward Barnett, and Barnett signed a consent form to search the house. The form was admitted into evidence. Collier testified that Lee Ann Wolfe lived with Barnett, and she also signed a consent-to-search form a few days after the initial search. The form was admitted into evidence.

Collier testified that during his search of the residence, he tried to assemble everyone in the living room for safety purposes. However, Collier recalled that during the search, Lee Ann Wolfe went into the bathroom and did not come out for approximately five minutes, despite his insistence

that she do so. Collier testified that when Wolfe emerged from the bathroom, he and Detective Mitchum inspected the bathroom, and they observed "where the water to the commode was coming back up, and there was marijuana on the lids to the toilet." He reported that Detective Mitchum reached into the toilet and pulled out some of the marijuana.

Collier stated that he intended to "pat everybody down" to insure that nobody had a weapon. He recalled that prior to searching Barnett, he asked him "to make sure he didn't have [any] needles or anything that would poke [him] when [he] dug into [Barnett's] pockets." Collier testified that Barnett announced that he had a twenty-five-caliber gun in his left pant pocket. He reported that the Bureau of Alcohol, Tobacco, Firearms, and Explosives (A.T.F.) later informed him that the weapon was a "[z]ip gun." Collier testified that during the search of Barnett's person, the following occurred:

> While I'm handling the gun, I see a flash in behind Edward Barnett's back, and lying on the couch is a bag of white powder . . . cocaine. And all of a sudden I've got Eddie or Terry Turner, who was sitting on the couch jumping up, hollering, Wait a minute, I need to talk to you. And nobody would claim ownership.

Collier acknowledged that although Barnett's hand moved when he saw the "flash," he did not actually see Barnett toss the bag of cocaine. He recalled that once Deputy Gary Murrell arrived on the scene, the officers removed items from the couch and found a second bag of cocaine. Collier identified the bags of cocaine in court.

Collier testified that after they found the two bags of cocaine, he started writing down an inventory of everything that was seized. He reported finding a plastic bag containing lithium batteries that were "stripped out laying on the coffee table," a white pill bottle that contained iodine crystals on the entertainment center in the living room, and a mason jar which contained "a peachy white powder substance, pseudoephedrine" in the kitchen. He identified the peachy substance in court, and he explained that it "is like a speed type . . . upper . . . [that] keeps you awake." He also reported that the substance "can be used in the makings of [methamphetamine]."

Collier stated that A.T.F. confiscated the "[z]ip gun" and interviewed Barnett. He reported that he was present during the interview and that he asked Barnett about the stolen property found at the residence. According to Collier, Barnett admitted that he was "trading property for drugs." He stated that Barnett also admitted that he made the pocket gun and that he always carried a gun with him everywhere he went. He reported that Lee Anne Wolfe was married to Kenneth Wolfe, who was also lived in the residence. Collier testified that the residence had two bedrooms, one of which Barnett and Lee Anne Wolfe shared.

Collier testified that the air compressor stolen from D. & R. Market was found in the home and identified by the victim. He recalled that the coin box on the compressor was broken. Collier stated that he found various drug paraphernalia around the home, including several baggies, digital

-4-

scales, and syringes. He noted that some of the syringes appeared to have been used and that some still had liquid in them.

On cross-examination, Collier acknowledged that Barnett "tried to take credit for all the drugs in the home." He stated that Barnett claimed ownership of the drugs in the home and said that Lee Anne Wolfe "had nothing to do with it." Collier testified that Barnett did not give a statement independent of the one he gave to the A.T.F. He reported that he never saw the statement that was written by the A.T.F. and signed by Barnett. Collier maintained that he saw Barnett throw a bag of cocaine into Turner's lap.

Collier testified that he investigated the following five individuals who were in the residence at the time it was searched: Edward Barnett, Kenneth Wolfe, Lee Ann Wolfe, Jennifer Caudill, and Terry Turner. Collier testified that Jeanette Caudill, who also lived in the home, was asleep in Kenneth Wolfe's bedroom when police arrived. He recalled that some drug paraphernalia and a few pills were found in Kenneth Wolfe's bedroom. He stated that Kenneth Wolfe was in the living room where drugs were also found. Collier testified that he obtained a statement from Terry Turner. He reported that he did not take a statement from Jennifer Caudill. Collier testified that Barnett and Lee Ann Wolfe slept in one bedroom, Kenneth Wolfe and Jennifer Caudill slept in another bedroom, and Terry Turner slept on the couch. He stated that Turner had been there for about a week.

Collier testified that "the only thing that [he] could testify to that [he] found that would connect [Lee Ann Wolfe] is marijuana in the commode." He acknowledged that there was only one bathroom in the home. Collier testified, "I am saying that Lee Ann Wolfe come [sic] out, and there was marijuana floating in the toilet." He stated that the thefts in this case were his "main concern" and that he "turned the drug case over to the drug guys." Collier acknowledged that Lee Ann Wolfe assisted him in recovering the property which Barnett was indicted for stealing.

Collier testified that Kenneth Wolfe's signature was also on the consent to search form which Barnett signed. He stated that the incident concerning Lee Ann Wolfe and the marijuana in the toilet occurred about twenty or thirty minutes after he arrived on the scene. Collier acknowledged that when he asked Barnett about searching his person, Barnett was very forthcoming about carrying a gun. He noted that while he was looking at the gun, he saw a "flash" in his peripheral vision and immediately thereafter saw a bag of cocaine on the couch. Collier testified that the two bags of cocaine found on the couch appeared to be in the same type of plastic bags. He recalled that the second bag of cocaine was found under a t-shirt on the couch. Collier also stated that he did not think that Barnett was wearing a shirt, but he believed that Turner was fully clothed. He testified, "I'm pretty positive that Barnett threw a bag down on the couch."

Collier reported that before he entered the house, he asked Barnett if anything illegal would be found. According to Collier, Barnett responded that he had just smoked a marijuana joint and that there was no more marijuana in the house. He stated that Barnett told him that Marty Gratz had brought him all of the stolen property.

On re-direct examination, Collier noted that police found stripped lithium batteries and iodine tablets in a white container. He stated that he waited for a female officer to arrive at the scene to search Lee Ann Wolfe. Collier testified that Bernie Hayes searched Lee Ann Wolfe. He acknowledged that no drugs were found on Caudill, Turner, or Kenneth Wolfe. Collier testified that Caudill and Turner did not have any personal belongings in the home.

Deputy Bernie Hayes of the Hawkins County Sheriff's Department testified that around June 6, 2001, she was called to 1116 Slate Hill Road to conduct a search. She stated that she was in plain clothes that day and that she had previously been out looking for the air compressor missing from D. & R. Market. Hayes testified that gouge marks were left where the compressor was taken, and she followed the marks to Lake Access Road, which intersects Slate Hill Road. She recalled that the marks ended about one-tenth of a mile from 1116 Slate Hill Road.

Hayes testified that she examined the bathroom of the residence and observed what appeared to be marijuana in the toilet. She stated that she also found the following items in the bathroom: approximately four small bags of marijuana in the trash can; marijuana, small vials, blue pills, and scales in the hamper; and a white liquid in one of the bathroom drawers. She testified that scales such as the ones she found in the bathroom are commonly used to weigh marijuana and other drugs. She also observed in the bathroom syringes and an Igloo cooler "with a mask wrapped around it" which contained a blue bottle with pills in it. Hayes testified that she turned all of the drugs that she found over to Deputy Gary Murrell so that he could send them to the Tennessee Bureau of Investigation (T.B.I.) for analysis. Hayes reported that she searched Lee Ann Wolfe's purse and found, among other things, two pipes, a syringe, a small bag of marijuana, and a mirror.

On cross-examination, Hayes acknowledged that she did not find any rolling papers in Lee Ann Wolfe's purse. She stated that she noticed a white substance on the mirror found in the purse, but she could not conclude that it was cocaine. Hayes acknowledged that the drugs found in the bathroom could have belonged to anyone in the home. She noted that she was called to the scene mostly to search the female suspects, and she did not search or talk to Barnett. On re-direct examination, Hayes testified that everyone in the residence had been moved outside by the time she arrived on the scene, so she did not have any knowledge as to what Lee Ann Wolfe was doing in the bathroom before she arrived.

Brad Depew of the Hawkins County Sheriff's Department testified that he is trained in the area of drug-related crimes. He stated that he participated in the search of the residence located at 1116 Slate Hill Road. Depew reported that in the computer room, he found a light bulb that "had the ends and the insides taken out" and "had tape and, like, a straw or something there on top of it." Depew testified,

> In a lot of cases [light bulbs are] used for smoking crystal meth, methamphetamine, or sometimes cocaine. You heat the bottom of the bulb. You can see a darker area in it. That's where you put your drugs, and then hold a lighter to it and heat it. And you can smoke it . . . using that.

He noted that the pipe was not really consistent with marijuana use. Depew acknowledged during cross-examination that he did not know who owned the items found in the computer room.

Depew testified that he also searched a maroon truck that belonged to Barnett. He observed a bag containing approximately one ounce of marijuana on or near the driver's seat of the truck. In addition, Depew stated that he found a set of digital scales inside the glove box. He noted that the scales usually cost around $200 and are used in the drug trade to weigh marijuana, cocaine, crystal methamphetamine, and other drugs. On cross-examination, Depew stated that the truck was locked, but he thought that Barnett gave the keys to police.

Deputy Gary Murrell of the Hawkins County Sheriff's Department testified that he was assigned to the narcotics investigation unit and that he assisted in the search of the home of Lee Ann Wolfe and Edward Barnett. Murrell testified that he searched the bedroom of Wolfe and Barnett. He reported that he found a Winnie-the-Pooh organizer which contained two plastic baggies of white powder, which was later identified as methamphetamine. Murrell testified that he also found a jar of partially-smoked marijuana cigarettes on the nightstand beside the bed in which Lee Ann Wolfe and Edward Barnett slept.

Murrell stated that he discovered a metal ammo can containing several packages of lithium batteries, which he explained are known to be used in the manufacture of methamphetamine. He reported that he found a spoon with some residue, rolling papers, a "porcelain type glass plate," and "a small plastic container" on the night stand. Under the night stand, Murrell located a plastic container in which the following items were found: plastic baggies, unlabeled pill bottles, syringes, a set of scales, hemostats, and a small calculator. He stated that he also found three medication bottles with Barnett's name on them and night vision equipment in the bedroom. Murrell found a "white, small, bowl-type container with white powder in it, [which he] believed to be baking soda." He testified that he collected all of the drugs found in the home and sent them to the T.B.I. for analysis. Murrell noted that oxycodone tablets were found in Barnett's pocket and dihydrocodeinone was found in his bedroom.

On cross-examination, Murrell acknowledged that the porcelain plate found on the nightstand was not checked for fingerprints. In addition, he stated that the plate was not tested to determine the substance on it. Murrell noted that some of the syringes that he found were "loaded," but they were not tested to determine what was in them. Murrell acknowledged that the ammo container of lithium batteries was also not tested for fingerprints. Murrell reported that he spoke to Barnett on June 7, 2001. He recalled that Barnett claimed that he was the only person involved with the drugs. Murrell read the following portion of Barnett's statement in court:

We are trading property for drugs. I wasn't involved in any of the burglaries. Lee Ann Wolfe wasn't involved in the drugs. Lee Ann Wolfe is my girlfriend.

I made the pocket gun that was found on me. I always carry a gun on me.

Denise Buckner testified that she is a special agent forensic scientist with the T.B.I. and that her specialty is drug chemistry. She stated that the Hawkins County Sheriff's Department sent her a number of substances in connection with this case, but she tested only six of the exhibits because that is all the T.B.I. would allow. Buckner identified the following from the samples tested: 13.8 grams of cocaine, 145.0 grams of marijuana, 0.9 grams of methamphetamine, 424.2 grams of pseudoephedrine, ten dihydrocodeinone tablets, and eight oxycodone tablets. Buckner testified that the marijuana was packaged in seven different bags which she weighed individually and then combined for a total weight of 145.0 grams. She reported that 26.6 grams of marijuana were attributed to Barnett, and the remainder was found in the bathroom.

Buckner testified that pseudoephedrine is a "precursor for one of the techniques for making methamphetamine." She explained that the pseudoephedrine tablets are crushed and heated. She also testified that the lithium contained in batteries can be used to make methamphetamine. Buckner stated that "a lot of fumes [are] associated with the making of methamphetamine," and a mask could be used to reduce the amount inhaled. On cross-examination, Buckner testified that according to the request for examination form, none of the drugs were taken from an individual.

Kenneth Wolfe testified that he was married to Lee Ann Wolfe and that they had lived in the residence located at 1116 Slate Hill Road for approximately six years. Wolfe denied that Barnett lived in the home. Instead, he claimed that Barnett was merely a "frequent visitor." Wolfe maintained that he had never seen Lee Ann Wolfe or anyone else use drugs in the residence. Wolfe testified that he did not know to whom the drugs found in the house belonged. When asked how he knew that none of the drugs found by police belonged to Lee Ann Wolfe, Kenneth Wolfe testified, "Well, I guess I couldn't honestly answer that. I just haven't seen her do any drugs."

On cross-examination, Kenneth Wolfe acknowledged that he was present during the search of his house and that he had an opportunity to observe some of the drugs and drug paraphernalia that the police confiscated. However, he denied seeing Barnett bring the drugs into the home or seeing Barnett handling the drugs. Rather, Wolfe testified that Terry Turner brought drugs into the home. Wolfe acknowledged that he had seen Turner with various amounts of marijuana in different baggies. He stated that he could not say that Turner brought into the residence the equipment that could have been used to manufacture methamphetamine. He also stated that he could not say that he saw Turner conduct any drug deals in the home. Wolfe testified that during the six weeks or so prior to the arrests in this case, he was not at home very much. He claimed that he spent most of his time on his houseboat and at his girlfriend's house. Wolfe testified that Barnett stored various tools and equipment in his vehicles and that various people, including Terry Turner, had access to those vehicles.

Wolfe admitted that the home in which he lived was actually titled in his father's name. However, he claimed that he had a lease with an option to buy the home. Wolfe acknowledged that he had been convicted in 1999 in Hamblen County for shoplifting. He also acknowledged that he pled guilty to stealing an air compressor.

Wolfe testified that he was still married to Lee Ann Wolfe and that he did not want her to go to jail. He stated that at the time of the arrests in this case, Lee Ann Wolfe and her boyfriend, Edward Barnett, were living in the home with him. Wolfe reported that at the time of the offenses, he was living in Jefferson County. Thus, he acknowledged that he did not know what Lee Ann Wolfe and Barnett were doing in the home during that time.

Jeanette Caudill testified that in June 2001, she had been staying "off and on" with Kenneth Wolfe at the residence located at 1116 Slate Hill Road. However, she stated that at the time of the offenses, she and Kenneth Wolfe "hadn't been there for quite a while." Caudill claimed that prior to the day of the arrests, it had been approximately six weeks since she had been in the Slate Hill Road home. She maintained that she never saw any drugs while she was in the home.

On cross-examination, Caudill testified that the last time she was at the residence, Lee Ann Wolfe and Edward Barnett were living there. She stated that Terry Turner had been at the house before, but he was not staying there six weeks prior to the offenses when she was last there. Caudill acknowledged that she was asleep in Kenneth Wolfe's bedroom when police entered the home on June 6, 2001. She stated that she did not go into Barnett's bedroom. Caudill admitted that she had a sexual relationship with Kenneth Wolfe.

Terry Turner testified that in June 2001, he had been staying at 1116 Slate Hill Road. However, he stated that he "left for a little bit" to help Kenneth Wolfe with his houseboat. Turner noted that he was at the house on the day of the arrests in this case and that he had been there for a couple of days. He acknowledged that he gave a statement to Detective Collier on the day of the arrest. Turner testified that he never saw Lee Ann Wolfe involved with any drugs. When asked to whom the drugs belonged, Turner replied, "I never really seen them with it, but I have heard them talk about it when there were other people would [sic] come over." He stated that the "them" to whom he referred were "people that Eddie Barnett dealed [sic] with." Turner testified that the "people" would ask for Barnett, and they "would go to one room" with Barnett. He stated that he never heard Lee Ann Wolfe's name mentioned during these transactions.

On cross-examination, Turner testified that at the time of the arrests in this case, he had been at the Slate Hill Road residence for about a week, where he was sleeping on the couch. He stated that he was asleep on the couch on the day that Detective Collier came to the residence. Turner claimed that Detective Collier searched Barnett right in front of the couch where he was sitting, and as Barnett held out a gun with one hand to it to show Collier, he used his other hand to throw two bags of cocaine onto the couch. Turner testified that he jumped off of the couch as soon as Barnett threw the bags of cocaine, and the bags of cocaine landed right beside him on the couch. Turner testified that there was a blanket, but no t-shirt, on the couch. He maintained that he was not selling drugs, and he denied that Marty Gratz brought him property in exchange for drugs. He testified that Marty Gratz gave him an air compressor to "keep his mouth shut" about it being stolen. He indicated that Gratz had been to the house a few times and had given Barnett property. He stated that Gratz brought the compressor to trade it with Barnett for drugs, but Gratz ended up giving it to Turner to keep Turner quiet. Turner reported that he last used drugs about two weeks before the

arrests in this case. Turner stated that he pled guilty to the charges in this case, and he was sentenced to "a year at thirty percent."

Turner reported that while he was staying at the Slate Hill Road residence, he could not enter the room in which Lee Ann Wolfe and Edward Barnett slept because they kept it locked. He testified that he had previously "snorted a line or two" of crystal methamphetamine with Lee Ann Wolfe. Turner acknowledged that someone came to the home asking about the four-wheeler, and he told them that Barnett was offering it for sale. He stated that Barnett went to his bedroom to conduct his drug deals. On re-direct examination, Turner maintained that he had never seen Lee Ann Wolfe sell or deliver drugs to anyone. He also stated that he had never seen her aide Barnett in the sale or delivery of drugs.

Edward Barnett testified that he, Lee Ann Wolfe, and Kenneth Wolfe all lived at the Slate Hill Road residence. He noted that he was "in and out all the time," that Lee Ann Wolfe was "moving back and forth with her mom because her mom is bad off," and that Kenneth Wolfe, who was "sick," "stay[ed] with his brother." He claimed that "there really wasn't nobody [sic] at the house a lot of times." When asked what "drug problems" he had at the time Detective Collier came to his house, he replied, "Coke. And I'm on hydros, Robaxins and Clonopin. And a couple of other ones I'm on. And I had just got through doing a shot when he come." He stated that some of those medications were found in the bottles in his bedroom. Regarding drug transactions, Barnett testified, "Well, the only drugs I ever seen [sic], mostly was, if I had some coke I got from somebody and done for myself, you know. And pot, smoke a joint or two, you know. It's a habit I've got, that I have been working on trying to get off of."

Barnett stated that Terry Turner was always out working on one of Barnett's cars. Barnett testified that he never locked the doors to his truck, and the keys were in the ignition on the day of the arrests. When asked if he ever saw Turner conduct any drug transactions, Barnett replied, "He had a few people come by, but I never paid no [sic] attention to what he was doing or nothing [sic] like that."

Barnett recalled that on June 6, 2001, Detective Collier asked to search his person and asked if he had anything in his pockets. Barnett told Collier that he had a gun in his pocket. He testified, "But then I started to sit down. And Terry started to get up and flopped the covers or something like that back. And there was something that flew." According to Barnett, Collier stated, "Whoa, son, what's this right here?" and told Turner to sit back down. He stated that Collier then finished searching him.

On cross-examination, Barnett maintained that Lee Ann Wolfe was not involved with any of the drugs discussed in this case. He acknowledged that although he had traded property for drugs, he did not receive any pills from Johnny Coffee in exchange for the four-wheeler. When questioned about a bottle of pills prescribed for Johnny Coffee that were found in Barnett's home, Barnett testified that Coffee "left them there." Barnett claimed that he never saw the mason jar containing pseudoephedrine on his kitchen stove. He acknowledged that police found scales in his truck, but

he noted that they could be used to weigh stamps or letters. Moreover, Barnett testified that the scales did not belong to him. He also stated that the bags which were found in his bedroom could be used for sandwiches. Barnett denied ownership of the cocaine or the methamphetamine.

Barnett claimed that prior to trial, he had never seen the Winnie-the-Pooh notebook binder. He stated that there were no drugs or drug paraphernalia on top of his night stand. Barnett claimed that Terry Turner used the mask and thermos where he worked. When asked if Lee Ann Wolfe flushed the marijuana for him, Barnett stated, "If I had any, she better not have flushed it at all."

### III. Analysis
### A. Sufficiency of the Evidence

Lee Ann Wolfe and Edward Barnett both contend that the evidence presented at trial was insufficient to sustain the convictions against them. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

### 1. Lee Ann Wolfe

Lee Ann Wolfe argues that insufficient evidence was presented at trial to convict her of the following offenses: (1) simple possession of cocaine, a Schedule II controlled substance; (2) possession of methamphetamine, a Schedule II controlled substance, with the intent to sell or deliver; (3) possession of more that .5 ounces of marijuana, a Schedule VI controlled substance, with intent to deliver; (4) possession of drug paraphernalia; and (5) tampering with evidence. Wolfe contends that since Edward Barnett claimed responsibility for the drugs found in the home, she should not have been convicted of any drug charges.

-11-

Initially, we note that possession of contraband may be actual or constructive. State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). "The state may establish constructive possession by demonstrating that the defendant has the power and intention to exercise dominion and control over the controlled substance either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." Id. However, "[o]ne's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Moreover, the intent to sell or deliver may be inferred from the quantity of drugs possessed by an offender coupled with "other relevant facts surrounding the arrest." State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984).

Testimony was introduced indicating that Lee Ann Wolfe was more than a mere presence in the home. Her husband, Kenneth Wolfe, owned the home, and she lived there with her boyfriend, Edward Barnett. The authorities found drugs and drug paraphernalia in virtually every room of the house, including the kitchen, the bathroom, the computer room, and the bedroom in which she and Edward Barnett slept. Deputy Murrell testified that he found two plastic bags of methamphetamine, a jar of marijuana cigarette stubs, syringes, and a set of scales in the bedroom shared by Barnett and Lee Ann Wolfe. Testimony was presented that Barnett and Wolfe kept the door to their bedroom locked so that nobody else could access it. Deputy Hayes testified that she found two pipes, a syringe, a small bag of marijuana, and a mirror with a white substance on it in Wolfe's purse. Based on the types and quantity of drugs found in the home, the fact that Wolfe lived in the residence, the packaging of the drugs, and the presence of a number of scales that could be used to weigh drugs, we conclude that sufficient evidence was presented for a determination by a rational jury that Wolfe possessed methamphetamine and marijuana with the intent to sell or deliver. We also conclude that sufficient evidence was presented to convict Wolfe of simple possession of cocaine.

Wolfe argues that several witnesses testified that she was not involved with any of the drugs in the house. However, the jury apparently discredited the testimony of the individuals who claimed that Wolfe was innocent. In light of the large quantities of drugs and drug paraphernalia that were found throughout the house, the jury obviously found it unlikely that Wolfe was not involved.

In addition, there was sufficient evidence for a jury to convict Lee Ann Wolfe of tampering with evidence. When police arrived at the residence and initiated a search, Wolfe immediately went to the bathroom. Detective Collier testified that despite his insistence that Wolfe come out of the bathroom, she remained there for at least five minutes. When Wolfe finally emerged from the bathroom, Detective Collier noticed marijuana in and around the toilet. This issue is without merit.

**2. Edward Barnett**

Edward Barnett argues that insufficient evidence was presented at trial to convict him of the following offenses: (1) possession of .5 grams or more of cocaine, a Schedule II controlled substance, with intent to deliver, (2) possession of methamphetamine, a Schedule II controlled substance, with intent to deliver, (3) possession of dihydrocodeinone, a Schedule III controlled

substance, with intent to deliver, (4) possession of oxycodone, a Schedule II controlled substance, with intent to deliver, (5) possession of more than .5 ounces of marijuana, a Schedule VI controlled substance, with intent to deliver, (6) possession of drug paraphernalia, (7) theft of property valued between $1,000 and $10,000, and (8) theft of property valued under $500.

Regarding the drug offenses, Barnett argues that much of the evidence obtained from the home incriminated Terry Turner. However, although Barnett suggested that Turner was to blame for the drugs, evidence was presented that Turner had been staying in the house for only about a week. Evidence was presented that the Defendant lived in the house and shared a bedroom with Lee Ann Wolfe. Barnett had access to all parts of the house and slept in the bedroom where police found two plastic bags of methamphetamine, a jar of marijuana cigarette stubs, syringes, and a set of scales. Drugs and drug paraphernalia were found in various other rooms throughout the house, as well as on Barnett's person and in his truck. In addition, Barnett acknowledged that he used drugs and that he had traded property for drugs. Detective Collier testified that Barnett "tried to take credit for all the drugs in the home," and he maintained that Barnett threw a bag of cocaine on the couch during the search of his person. Thus, sufficient evidence was presented to convict Barnett of the drug offenses.

Regarding the theft offenses, Barnett contends that Terry Turner admitted that he received stolen property from Marty Gratz. We note that all of the stolen property belonging to Robby Drinnon and Danny Wilder, except for the four-wheeler, was found at Barnett's home. In addition, the four-wheeler was in the possession of a man whose prescription drugs were found at Barnett's home. Although Barnett claimed that he was given the four-wheeler in lieu of a debt, a rational jury could have concluded that he stole the four-wheeler, as well as the other items located in the home.

## B. Sentencing

Lee Ann Wolfe and Edward Barnett both contend that the trial court erred in sentencing them. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any

statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the midpoint of the sentencing range unless there are enhancement or mitigating factors present. Id. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

Enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114.

> The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The

-14-

defendant bears the burden of showing the impropriety of the sentence imposed. <u>Ashby</u>, 823 S.W.2d at 169.

## 1. Lee Ann Wolfe

The trial court sentenced Lee Ann Wolfe to the following: eleven months and twenty-nine days for simple possession of a Schedule II controlled substance, four and a half years for possession of a Schedule II controlled substance with intent to sell or deliver, one year for possession of more than 0.5 ounces of a Schedule VI controlled substance with the intent to sell or deliver, eleven months and twenty-nine days for possession of drug paraphernalia, and four and a half years for tampering with evidence. The trial court ordered that the sentences run concurrently for an effective sentence of four and a half years.

In sentencing Wolfe, the trial court only applied one enhancement factor: that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(2).[1] In applying this factor, the trial court considered Wolfe's 1993 conviction for shoplifting in an amount under $500 and her previous drug usage. The trial court did not apply any mitigating factors.

Wolfe argues that the trial court erred by failing to apply the following mitigating factors: (1) that "[t]he defendant played a minor role in the commission of the offense," <u>id.</u> § 40-35-113(4); (2) that "[t]he defendant assisted the authorities in locating or recovering any property or person involved in the crime," <u>id.</u> § 40-35-113(10); and (3) that "[t]he defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime." <u>Id.</u> § 40-35-113(12).

Regarding mitigating factor (4), the trial court stated:

> I can't say that you're a leader in the commission of the offense. But based upon all the facts and circumstances . . . I think the jury took care of your minor role in some parts of the offense by finding you not guilty of the offenses. But on the other hand, the ones that they did convict you of, I can't say; I don't believe anybody would say from looking at the proof that they were minor roles, especially one of the Class C felonies . . . [Y]ou were convicted by yourself with tampering with evidence.

The trial court also refused to apply mitigating factor (10), stating "[T]he truth is [she] didn't really assist authorities in this case with the evidence or recovering property to any significant extent." In fact, we note that Wolfe was convicted of tampering with evidence. Finally, the trial court noted

---

[1]We note that because of recent statutory amendments, the enhancement factor numbers changed between the time of sentencing in this case and this appeal. <u>Compare</u> Tenn. Code Ann. § 40-35-114 (1997) <u>with</u> Tenn. Code Ann. § 40-35-114 (Supp. 2002). However, the substance of the factors discussed in this case did not change as a result of the amendments.

-15-

with regard to mitigating factor (12): "That evidence just isn't there. It's just not there sufficient to activate that." We conclude that the trial court did not err by not applying mitigating factors (4), (10), or (12). Thus, we conclude that the sentences imposed by the trial court are proper.

### 2. Edward Barnett

The trial court sentenced Edward Barnett to the following: twelve years for possession of a Schedule II controlled substance with intent to sell or deliver, six years for possession of a Schedule II controlled substance with intent to sell or deliver, four years for possession of a Schedule III controlled substance with intent to sell or deliver, six years for possession of a Schedule II controlled substance with intent to sell or deliver, two years for possession more than 0.5 ounces of a Schedule VI controlled substance, eleven months and twenty-nine days for possession of drug paraphernalia, four years for theft of property valued between $1,000 and $10,000, and eleven months and twenty-nine days for theft of property valued at $500 or less. The trial court ordered that the sentences run concurrently for an effective sentence of twelve years.

In sentencing Barnett, the trial court applied the following enhancement factors: (1) that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," id. § 40-35-114(2); (2) that "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors," id. § 40-35-114(3); and (3) that "[t]he defendant possessed or employed a firearm . . . during the commission of the offense." Id. § 40-35-114(10). The trial court stated that the factors listed were "very strong enhancement factor[s]." The trial court applied as a mitigating factor that "[t]he defendant assisted the authorities in locating or recovering any property or person involved in the crime." Id. § 40-35-113(10). The trial court acknowledged that Barnett assisted officers in recovering the stolen property.

In support of enhancement factor (2), the trial court stated that the Defendant's previous history of criminal convictions was included in the presentence report. The trial court indicated that Barnett was convicted of public intoxication in 1990. The trial court also indicated that in 1994, Barnett was convicted of reckless endangerment, driving under the influence, driving on a revoked license, and simple possession of marijuana. The trial court noted that although the reckless endangerment charge was dismissed, it was not dismissed on the merits. Finally, the trial court noted that while Barnett was on bond for the present offenses, he received a theft conviction in Hamblen County and a pending charge of theft in Cocke County. The trial court noted that Barnett was on probation for a reckless endangerment conviction at the time of these offenses.

The trial court stated that the felony reckless endangerment conviction involved Barnett shooting a pistol into a residence while a woman and her daughter were present in the home. The trial court stated:

> Based upon that consideration, based upon the fact of the enormity of the drugs
> involved in this case, based upon the fact that the testimony in this case was that

-16-

people would come to this residence and go into Mr. Barnett's room and, apparently, drug trading and transactions would go on there, causes [sic] the mitigating factor to have no effect on reduction from the maximum sentence.

Barnett contends that the trial court erred by failing to apply as a mitigating factor that he "was cooperative with police and led police to a person's home where stolen property was recovered." Despite the Defendant's argument, we note that the trial court applied mitigating factor (10), that "[t]he defendant assisted the authorities in locating or recovering any property or person involved in the crime." Id. § 40-35-113(10). The application of enhancement factor (10) is supported by the record. However, the trial court found, based on "the facts and circumstances," that mitigating factor (9), that "[t]he defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses," was not applicable. Id. § 40-35-113(9). We conclude that Barnett failed to present sufficient evidence that he assisted authorities in uncovering other offenses or apprehending other persons. Thus, we conclude that the trial court did not err by failing to apply mitigating factor (9).

Accordingly, we AFFIRM the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

-17-